1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MARIANNE RENEE CABALLERO                    No.  2:14-cv-1030-EFB
      RODRIGUEZ,
12
                      Plaintiff,
13                                                ORDER
             v.
14
      CAROLYN W. COLVIN, Acting
15    Commissioner of Social Security,

16                    Defendant.

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    ("Commissioner") denying her application for disability and Disability Insurance Benefits

20    ("DIB") under Title II of the Social Security Act.  The parties' cross-motions for summary are

21    pending.  For the reasons discussed below, plaintiff's motion is granted, defendant's motion is

22    denied, and the matter is remanded for further proceedings.

23    I.     BACKGROUND

24          Plaintiff filed an application for a period of disability and DIB on June 20, 2011, alleging

25    that she had been disabled since July 13, 2007.[1]  Administrative Record ("AR") 55, 151-152.

26    /////

27    _____

28          [1] Plaintiff later amended her onset date to January 1, 2010.  AR at 155.

                                                    1

Her application was denied initially and upon reconsideration. *Id.* at 94-98, 102-106.  On October 30, 2012, a hearing was held before administrative law judge ("ALJ") Daniel Heely.  *Id.* 19-40. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified.  *Id.*

On December 6, 2012, the ALJ issued a decision finding that plaintiff was not disabled under section 216(i) and 223(d) of the Act.[2]  *Id.* at 75-87.  The ALJ made the following specific findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

---

[2]   Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2. The claimant has not engaged in substantial gainful activity since January 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; obesity; and depressive disorder (20 CFR 404.1520(c)).

    * * *

4. The claimant does not have  an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.

    * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b).  Specifically, the claimant can lift and or carry 20 pounds occasionally and 10 pounds frequently; she can stand and or walk for 6 hours, each, with normal breaks; she can sit for 6 hours, with normal breaks; she can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she is limited to only occasional overhead reaching with both upper extremities, where occasional lifting is defined as up to 1/3 of the workday; she can never work around hazards such as dangerous, moving machinery and unprotected heights; and she is limited to jobs involving simple, routine, and repetitive tasks.

    * * *

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

    * * *

7. The claimant was born on September 7, 1960 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant has subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 77-87.

Plaintiff's request for Appeals Council review was denied on February 27, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

II.    LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to adequately address the medical opinion evidence of record, and (2) rejecting her testimony without legally sufficient reasons. ECF No. 9-1 at 14-29.

4

Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence of record. *Id*. at 14-18.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  *Id*. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Kirti Solanki, M.D., treated plaintiff from September 8, 2008 through December 16, 2011. AR at 328.  She diagnosed plaintiff with severe degenerative joint disease of the cervical spine; multiple congenital spinal defects; congenital spinal fusions; hypothyroidism; chronic fatigue syndrome, chronic UTI, chronic diarrhea, chronic incontinence; and chronic depression.  *Id*.  Dr. Solanki opined that plaintiff could sit for 0-1 hours per day and stand/walk for 0-1 hours per day; must get up and move every 15-20 minutes and; can never lift or carry more than 5 pounds; but can occasionally lift or carry 0-5 pounds.  *Id*. at 330-331.  She also opined that plaintiff has marked limitations in grasping, turning, and twisting objects, and in using her arms for reaching; moderate limitations in performing fine manipulations; and that plaintiff was incapable of

handling even low stress work.  *Id.* at 331-333.  She further indicated that the earliest date these limitations were present was 2007.  *Id.* at 334.

The record also contains an opinion from Jeffrey A. Saal, M.D., also a treating physician. Dr. Saal wrote a letter to plaintiff's insurance company on April 20, 2009, in which he opined that plaintiff is restricted and limited to only the lightest of duties.  *Id.* at 263-264.  Specifically, he opined that "she cannot lift or carry objects greater than paper folders.  She cannot spend a prolonged period of time looking down at a desk or working on a computer . . . .  She is unable to carry out any physical activities of pushing, pulling, or lifting."  *Id.*

Plaintiff underwent a comprehensive internal medicine evaluation, which was performed by Jeffery Karon, M.D., an examining physician.  *Id.* at 306-309.  Dr. Karon diagnosed plaintiff as incapacitated secondary to chronic fatigue, with chronic pain in right scapula and as having chronic diarrhea.  *Id.* at 309.  He opined that she was limited to standing/walking to six hours; had no limitations on sitting; needed no assistive device; could occasionally lift 20 pounds and frequently lift 10; had no postural limitations; could only occasionally lift with her right arm; and had no workplace environmental activities limitations.  *Id.*

A. Nasrabadi, M.D., a non-examining physician, completed a Physical Residual Functional Capacity Assessment on October 12, 2011.  *Id.* at 50.  Dr. Nasrabadi found that plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for about six hours in an eight hour workday; push/pull without limitations; was unlimited in climbing ramps/stairs, balancing, stooping, kneeling, and crouching; but could only occasionally climb ladders/ropes/scaffolds and crawl.  *Id.* at 49-50.  Dr. Nasrabadi also found that plaintiff could only occasionally use her right shoulder for overhead reaching and lifting.  *Id.* at 50.

The record also contains an opinion from S. Reddy, M.D., another non-examining physician.  *Id.* at 64-67.  Dr. Reddy opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/sit/walk for about six hours in an eight hour workday; push/pull without limitation; climb stairs/ramps, balance, stoop, kneel and crouch without limitation; occasionally climb ladders/ropes/scaffolds; but was limited in overhead reaching with both arms.  *Id.* at 65-65.

1    Plaintiff first argues that the ALJ failed to account for her neck, back and right arm

2    impairments by failing to explain why he did not adopt, verbatim, Dr. Karon's opinion that

3    plaintiff was limited to only occasional lifting with her right arm.  ECF No. 9-1 at 15-17.

4    Examining physician, Dr. Karon, specifically opined that plaintiff could lift/carry 20 pounds

5    occasionally and 10 pounds frequently, but "can only occasionally lift with her right arm."  AR at

6    309.  Dr. Nasrabadi, a non-examining physician, assessed a similar, but slightly different

7    limitation:  plaintiff is limited (without specification to degree) in *overhead* reaching with her

8    right arm.  *Id.* at 50.  Dr. Reddy agreed with Dr. Nasrabadi's limitation to overhead reaching with

9    the right upper extremity, but also found that plaintiff was limited in reaching overhead with her

10   left upper extremity.[3]  *Id.* at 66.  The ALJ found that plaintiff was limited to only occasional

11   overhead reaching with both upper extremities, where occasional is defined as up to 1/3 of the

12   work day and limited carrying and lifting to only 10 pounds frequently.  AR at 79.  Thus, the ALJ

13   adopted the overhead lifting impairments assessed by Dr. Reddy, but rejected the broader right

14   upper extremity limitation assessed by Dr. Karon.  The ALJ gave no explanation for why the

15   limitation assessed by Dr. Karon was not incorporated into plaintiff's RFC, and therefore he

16   failed to satisfy the specific and legitimate standard for rejecting this limitation.

17   Plaintiff also claims that the ALJ failed to properly weigh the opinions from her treating

18   physicians.  She argues that the ALJ erred by failing to give legally sufficient reasons for

19   rejecting Dr. Solanki's opinion and failing to even discuss the opinion provided by Dr. Saal.  ECF

20   No. 9-1 at 21-29.

21   Turning first to Dr. Solanki's opinion, the ALJ gave minimal weight to this treating

22   opinion.  AR 83-84.  The ALJ provided several reasons for rejection Dr. Solanki's opinion: (1) it

23   was inconsistent with the record as a whole; (2) the limitations given by Dr. Solanki are more

24   restrictive than what can be supported with objective medical evidence; (3) Dr. Solanki relied

---

25   [3]  It is not clear exactly why Dr. Reddy believed plaintiff was also limited in overhead
26   reaching with her left upper extremity.  Dr. Reddy's explanation for the RFC determination states
     that the "Prior RFC determination of light with occasional overhead reaching dated 10/12/2011
27   (which was Dr. Nasrabadi's RFC assessment) is appropriate and I agree to affirm prior RFC as
     written."  AR 66.  Dr. Nasrabadi's RFC assessment did not include any limitations to overhead
28   reaching with the left upper extremity.  *Id.* at 50.

heavily on the subjective statements and limitations provided by the plaintiff; (4) Dr. Solanki's treatment of plaintiff is inconsistent with his opinion; and (5) the opinion was inconsistent with other evidence in the record indicating that plaintiff worked after 2007.  AR at 83-84.

As for the first two reasons, the ALJ provided no explanation for his conclusion that Dr. Solanki's opinion is inconsistent with the record as a whole and more restrictive than what can be supported by the objective medical evidence.  The ALJ's conclusory statements, without any explanation, fall short of satisfying the specific and legitimate standard.  An ALJ may satisfy his burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988).  As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

Here, the ALJ offered only his conclusion that Dr. Solanki's opinion was inconsistent with the record as a whole and unsupported by objective medical findings.  He failed to specifically identify any portions of the record that are inconsistent with Dr. Solanki's opinion or explain why the reported objective medical findings do not support the opinion.  Such conclusory dismissal of Dr. Solanki's opinion does not constitute a specific and legitimate reason for rejecting it.

Similarly, the ALJ concluded, without explanation, that "Dr. Solanki relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported."  *Id.* at 83.  A treating or examining physician's opinion may be rejected where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  However, the ALJ provided no explanation for his conclusion that Dr. Solanki's opinion relied heavily on plaintiff's subjective complaints without

1   objective support, and he does not cite any evidence in the record supporting this conclusion.

2   Further, Dr. Solanki indicated that his opinion was based off "MRI reports," and medical records

3   show that she relied on X-rays as well. *Id.* at 329, 368.  As such, the record indicates that Dr.

4   Solanki is based, at least in part, on objective medical findings.  Thus, the ALJ's conclusory

5   statement that Dr. Solanki relied heavily on plaintiff's subjective complaints is not supported by

6   the record, and does not justify the rejection of this treating opinion.

7          The ALJ also found that Dr. Solanki's treatment of plaintiff, which consisting mostly of

8   prescribing medications, was inconsistent with his opinion.  AR at 83.  An ALJ may reject the

9   opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant

10  suffers disabling conditions.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Dr.

11  Solanki treated plaintiff from September 8, 2008 through approximately December 16, 2011, and

12  saw her approximately every three months.  *Id.* at 328.  Dr. Solanki reported that he treated

13  plaintiff with various medications including Flexeril, Fentanyl, Vicodin, Norco, Percocet, Xanax,

14  Valium, and OxyContin (some of which are strong narcotics), and she also noted that plaintiff

15  received surgery and physical therapy.  *Id.* at 332.  Plaintiff argues that Dr. Solanki's treatment

16  was not conservative in light of the medications prescribed and the fact that she was plaintiff's

17  primary care physician.  ECF No. 9-1 at 23.  Plaintiff's argument is well taken.

18         Courts in this circuit have repeatedly found that the medications prescribed in the instant

19  case do not qualify as conservative treatment.  *See Molter v. Astrue*, No. CIV S-09-1113 GGH,

20  2010 WL 2348738, at *5 (E.D. Cal. June 8, 2010) (ALJ incorrectly referred to treatment as

21  conservative where fentanyl was given because "[f]entanyl is a heavy duty medication prescribed

22  for chronic pain.  Fentanyl is not prescribed willy-nilly as there are serious potential side

23  effects."); *Ardito v. Astrue*, No. CV 10-9181 JC, 2011 WL 2174891, at *4 (C.D. Cal. June 3,

24  2011) (finding narcotic prescriptions and muscle relaxers to be anything but conservative

25  treatment); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (finding over-the-counter

26  medication to be conservative treatment).  Thus, the medication prescribed by Dr. Solanki's

27  /////

28  /////

1    treatment does not constitute conservative treatment.  Furthermore, the ALJ does not identify

2    what treatment he believed this primary care physician should have been prescribing.  Instead, he

3    once again provides only his conclusion.

4        Lastly, the ALJ observed that Dr. Solanki opined that plaintiff's limitations dated back to

5    2007, but that the plaintiff "had work activity after this date, which would indicate that the

6    claimant has, at times, been able to work without the limitations noted by Dr. Solanki."  AR at

7    83-84.  The 2011 Multiple Impairment Questionnaire asked Dr. Solanki the following question:

8    "[i]n your best medical opinion, what is the earliest date that the description of symptoms and

9    limitations in this questionnaire applies?"  AR 334.  He responded with "since 2007."  *Id.*

10   Plaintiff's earning records show that she earned $10,444 in 2007, $9,000 in 2008 and $3,625 in

11   2009.  *Id.* at 154.  However, the record also shows that in 2004, 2005, and 2006 she earned

12   between $49,773 and $30,280.  *Id.*  Thus, there was a significant drop in pay beginning in 2007.

13   Plaintiff testified at the hearing that she "stopped working normally in 2007."  *Id.* at 27.  Her

14   testimony also show several unsuccessful attempts to resume working.  She would attempt to

15   work for a month, but would have to stop.  *Id.* at 28.  She also indicated that most of the money

16   she received in 2008 and 2009 "was just from vacation pay" and "some bonuses."  *Id.* at 28.

17   Thus, the record indicates that plaintiff attempted to perform work after 2007, but her

18   impairments prevented this endeavor.  Thus, the last reason provided by the ALJ is also not

19   supported by substantial evidence.  Accordingly, the ALJ failed to give specific and legitimate

20   reasons for rejecting treating physician Dr. Solanki's opinion.

21       Plaintiff also contends that the ALJ erred by completely failing to discuss the opinion

22   provided by Dr. Saal, which appears in a letter Dr. Saal wrote to plaintiff's insurance company on

23   April 20, 2009.  *Id.* at 263.  The Commissioner does not dispute that the ALJ's decision contains

24   no discussion of this opinion.  ECF No. 10 at 6.  The Commissioner argues, however, the any

25   error in failing to address this evidence was harmless because the opinion predated the January 1,

26   2010 alleged disability onset date.  *Id.*

27       The ALJ is "not required to discuss every piece of evidence" and "evidence that is neither

28   significant nor probative" need not be discussed.  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th

10

Cir. 2003).  Further, "medical opinions that predate the alleged onset of disability are of limited relevance."  *Carmickle v. Comm'r of the Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008). While all evidence need not be discussed in the ALJ's decision, "[t]he ALJ must consider all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Courts have found that an ALJ's failure to address a physician's opinion harmless where the opinion predates the claimant's alleged onset date and the opinion would not affect the outcome of the disability decision.  *See*, *e.g.*, *Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (finding that the ALJ's failure to address a doctor's opinion predating the alleged onset date where it would not affect outcome was harmless).

There is no dispute that the ALJ's opinion is completely devoid of any discussion concerning Dr. Saal's opinion, and therefore no reason was given for the opinion was rejected. Given that this matter must be remanded based on the ALJ's failure to properly evaluate the opinions from Drs. Karon and Solanki, the court declines to reach the issue of whether the ALJ's failure to discuss Dr. Saal's opinion was harmless.[4]  On remand, the ALJ shall address this opinion and explain what weight the opinion is given.  *See Tommasetti*, 533 F.3d at 1041.

IV.   <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in the Plaintiff's favor.

DATED:  September 30, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[4]  As the matter must be remanded for further consideration of the medical opinion evidence, the court declines to address plaintiff's remaining arguments.

11